THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **L'ASSOCIATION DES AMERICAINS ACCIDENTELS**<br>34 Rue Alexandre Dumas<br>78110<br>Le Vésinet<br>France<br><br>*Plaintiffs*,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF STATE**<br>600 19th Street NW<br>Washington DC 20522<br><br>*Defendant.* | Case No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

L. Marc Zell
D.C. Bar No. 959437
ZELL & ASSOCIATES INTERNATIONAL ADVOCATES, LLC
800 Connecticut Ave.
Washington, D.C. 20006
Email: mzell@fandz.com

Noam Schreiber,
D.C. Bar No. 90020231
ZELL & ASSOCIATES INTERNATIONAL ADVOCATES, LLC
800 Connecticut Ave.
Washington, D.C. 20006
Email: noam.schreiber@fandz.com

*Counsel for Plaintiff*

## INTRODUCTION

1. This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), seeking to compel agency action that has been unlawfully withheld or unreasonably delayed—namely, the publication and issuance of a final rule reducing the $2,350 fee currently charged as a precondition to voluntarily renounce U.S. citizenship under 8 U.S.C. § 1481(a)(5) to $450.

2. Plaintiff challenges the Government's unexplained, years-long failure to issue the final fee-reduction rule that the agency formally noticed to this Court it intended to promulgate on January 6, 2023—exactly three years ago. During this same period, the Government has continued to collect the superseded $2,350 fee under a regulation the agency has publicly acknowledged it is replacing, notwithstanding its completed cost study, finalized drafting, and express representation to this Court that fee-reduction rulemaking was underway and imminent.

3. This case challenges not the fee's validity, but the agency's strategic preservation of regulatory limbo, in which administrative inaction yields continuing revenue, frustrates reliance interests, and evades meaningful judicial oversight, all in violation of the APA's command that agencies conclude matters presented to them within a reasonable time.The Government's delay has frustrated reliance interests, frozen appellate proceedings, perpetuated unlawful fee collection, and infringed the fundamental statutory and constitutional right to renounce citizenship, imposing continuing harm on thousands of affected Americans residing abroad.

4. Plaintiff therefore seeks an order compelling Defendant to issue and publish the promised final rule without further delay.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law.

6. This Court has authority to compel agency action under 5 U.S.C. § 706(1).

7. Venue is proper under 28 U.S.C. §1391(e)(1) because Defendant is a federal agency and a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

8. Plaintiff L'Association des Américains Accidentels ("AAA") is a Paris-based non-profit organization, formed in 2017 under French law, with a principal mission to defend "Accidental Americans" residing outside the United States from the adverse effects of extraterritorial U.S. laws and policies.

9. AAA's members include individuals who (a) are U.S. citizens; (b) reside permanently outside the United States; and (c) seek to voluntarily renounce their U.S. citizenship under 8 U.S.C. § 1481(a)(5).

10. AAA brings this suit in its organizational capacity on behalf of its members, whose interests fall squarely within the zone protected by the APA.

11. Defendant United States Department of State ("DOS") is a federal agency responsible for administering citizenship renunciation and issuing Certificates of Loss of Nationality ("CLNs"), including prescribing and collecting the renunciation fee.

## FACTUAL ALLEGATIONS

12. The right of a U.S. citizen to renounce citizenship is a constitutional and natural right, guaranteed by statute, 8 U.S.C. § 1481(a)(5), and, for most of American history, was exercised free of charge.

13. For approximately 200 years prior to 2010, the United States imposed no fee as a condition of voluntary expatriation or citizenship renunciation.

14. In 2010, DOS issued a Notice of Proposed Rulemaking, proposing for the first time a renunciation fee. DOS set the fee at $450. 75 FED. REG. 6321, 6322, 2010 WL 429639 (Feb. 9, 2010).

15. In August 2014, DOS issued an Interim Final Rule raising the renunciation fee from $450 to $2,350, a five-fold increase. 79 FED. REG. 51247, 2014 WL 4219382 (Aug. 28, 2014). That rule went into effect on September 6, 2014 and became final in August 2015. 80 FED. REG. 51464, 2015 WL 5001152 (Aug. 25, 2015).

16. Since September 2014, the United States has continuously collected the $2,350 fee from renunciants seeking to renounce U.S. citizenship.

17. In December 2020, Plaintiff, together with individual plaintiffs, filed suit in this Court, *AAA v. DOS*, 1:20-cv-03573, before Judge Tanya Chutkan, challenging the legality and constitutionality of the renunciation fee.

18. Oral argument on summary judgment in that case was set for January 9, 2023. On January 6, 2023—less than 72 hours before argument—the Government filed a **"Notice of Intent to Pursue Rulemaking to Reduce Fee Amount"** ("Fee Reduction Notice"), representing it would lower the fee to $450.

3

19. Following oral argument, notwithstanding the Fee Reduction Notice, on February 10, 2023 the district court granted the Government's motion for summary judgment and denied plaintiffs' cross-motion as to all counts. *L'Association des Americains Accidentels v. United States Dep't of State*, 656 F. Supp. 3d 165 (D.D.C. 2023) ("Judge Chutkan's decision").

20. The *AAA v. DOS* plaintiffs appealed the decision on February 13, 2023 to the United States Court of Appeals for the District of Columbia Circuit (Case No. 22-5034). However, based on the Government's representation that DOS would complete new rulemaking to reduce the renunciation fee, the D.C. Circuit appeal was held in abeyance pending issuance and publication of the final rule formally reducing the fee.

21. After Judge Chutkan's decision, a different set of plaintiffs has commenced a putative class action in the U.S. Court of Federal Claims, seeking a refund of the excess portion of the renunciation fee on behalf of themselves and a proposed class of similarly situated individuals. *Jenke, et al. v. United States of America*, Case No. 1:24-cv-02005-SSS (the "*Jenke* case"). The Government has sought dismissal of the *Jenke* case, arguing, among other things, that *res judicata* bars the claims based on Judge Chutkan's decision in the earlier fee litigation.

22. On October 2, 2023, DOS published the proposed rule to lower the $2,350 fee to $450. *See* 88 FED. REG. 67687, 2023 WL 6374126 (Oct. 2, 2023). Exactly three years have gone by since the Fee Reduction Notice and 827 days since the publication of the proposed rule and no final rule has yet been published.

23. This is in stark contrast to the time it took the Government to enact the rules to create and increase the fee. As alleged above, on August 28, 2014, the Government proposed to increase the $450 fee to $2,350. A little more than a week later, on September 6, 2014, the new $2,350 fee went into effect.

24. Defendant's delay is not the result of complexity, new cost studies, national security issues, or statutory ambiguity. It is the result of administrative inaction alone.

25. Upon information and belief, the reason for Defendant's delay is the benefit the Government derives from preserving the status quo ante—specifically, its ability to continue collecting the $2,350 fee while avoiding the procedural obligations and judicial scrutiny that will be triggered by final rule issuance.

26. Since the Government filed its Fee Reduction Notice in January 2023, at least 8,755 individuals have paid the $2,350 renunciation fee and completed renunciation, generating $20,574,250 in revenue for the United States.[1] The prolonged delay in issuing the final rule has therefore operated not merely as regulatory stagnation, but as a continuing revenue-preserving

---

[1] The numbers of renunciants and, hence, revenue, is apparently significant higher than alleged. IRS data from quarterly lists of expatriates, published in the Federal Register pursuant to 26 U.S.C. § 6039G, provides a concrete foundation for estimating the number of renunciants. However, these lists appear to record only "covered expatriates," defined under 26 U.S.C. § 877(a)(2) as individuals meeting specific income or asset thresholds subject to special tax rules upon expatriation. Under the "income test," an individual is a "covered expatriate" if the average annual net income tax liability for the five tax years preceding the year of expatriation exceeds $190,000. Under the "asset test" an individual is a "covered expatriate" if his/her net worth is $2 million or more on the date of expatriation. Renunciants who do not meet these criteria are likely excluded from these lists, significantly underrepresenting the total number of renunciants.

posture that financially benefits the Government while the rule remains unpublished.

27. Furthermore, by keeping the rulemaking process in a protracted state of regulatory limbo, DOS has effectively shielded its fee policy from meaningful judicial oversight or supervision. Defendant's continued failure to finalize the rule has functioned as a litigation advantage and defensive strategy in at least two other cases currently pending in federal court. In the *Jenke* case, the Government argues that, due to Judge Chutkan's decision, the claims are barred by *res judicata*. At the same time, DOS has expressly acknowledged that once the reduced fee rule is finalized, the proper course is to seek vacatur of that decision, eliminating any preclusive effect it may have.

28. Thus, by delaying issuance of the final rule, the Government has been able to: (1) maintain the appeal (Case No. 23-5034) in abeyance, (2) continue collecting the $2,350 fee, and (3) invoke the current procedural posture as a temporary preclusion shield in the *Jenke* litigation—despite conceding that the shield will not survive final rule publication.

29. Defendant has therefore unlawfully withheld and unreasonably delayed required agency action in violation of the APA.

## CLAIM FOR RELIEF

**Count I – Compel Agency Action Unreasonably Delayed [APA §706(1)]**

30. Plaintiff realleges and incorporates by reference paragraphs 1 through 29. Under 5 U.S.C. §706(1), this Court must compel agency action unlawfully withheld or unreasonably delayed. DOS elected to undertake rulemaking to

replace its $2,350 renunciation fee regulation. Once DOS chose to commence rulemaking and publicly represented its intention to reduce the fee, it assumed a discrete duty to conclude the matter within a reasonable time. Courts have recognized that an agency's initiation or grant of rulemaking creates a duty to act with reasonable dispatch toward a final, reviewable rule.

31. That duty is heightened here because the Government affirmatively represented to a federal court that fee-reduction rulemaking was underway, thereby inducing reliance, and caused the pending appeal to be held in abeyance on the premise that a final rule would issue.

32. The *TRAC* factors (*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*") for unreasonable delay are satisfied under these circumstances. Although no statute imposed a fixed deadline, the elapsed time – three years – far exceeds a reasonable period for completing rulemaking on a fee regulation that has already been fully scoped, studied, and submitted for final review. Specifically:

    1. *TRAC* Factor 1 (Rule of Reason): DOS has offered no rule of reason to justify years of delay for a discrete rule it has already elected to finalize. By contrast, when DOS sought to increase the renunciation fee in 2014, it moved from proposal to implementation in just nine days, publishing the Interim Final Rule on August 28, 2014, and placing the $2,350 fee into effect on September 6, 2014. This stark disparity confirms that DOS is fully capable of acting with urgency when it chooses to do so, and that its current delay is not the product

7

of administrative necessity, but the absence of a governing rule of reason.

2. *TRAC* Factor 2 (Statutory Timetable): The absence of a fixed statutory deadline does not permit DOS to delay indefinitely, especially where the APA supplies the operative "reasonable time" standard.

3. *TRAC* Factor 3 (Nature of Interests): The interest at stake—citizens' right to renounce citizenship—is profoundly personal, non-economic, and time-sensitive.

4. *TRAC* Factor 4 (Effect of Compelling Action): Compelling publication will not disrupt agency administration; the rule has already been commenced, developed, and submitted for final review.

5. *TRAC* Factor 5 (Reason for Delay): Upon information and belief, the delay is not caused by complexity, but by an incentive to preserve an advantageous regulatory limbo that allows continued collection of $2,350 in fees while avoiding judicial oversight.

33. The delay is therefore unreasonable, prejudicial, and ongoing, not incidental or justified.

34. DOS's failure to publish the final rule constitutes agency action unlawfully withheld and unreasonably delayed, within the meaning of the APA.

35. Plaintiff and its members are suffering continuing injury-in-fact directly traceable to DOS's failure to conclude the rulemaking process.

36. Plaintiff lacks any adequate alternative remedy to obtain timely publication of the final rule.

37. Because (1) DOS assumed a duty to act once it chose to commence rulemaking, and (2) because the *TRAC* factors are satisfied, Plaintiff is entitled to an order compelling agency action under the APA.

38. Plaintiff therefore requests that this Court compel DOS to publish and issue the final rule without further delay.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

43. Declare that Defendant violated the APA by unlawfully withholding and unreasonably delaying issuance and publication of the final rule reducing the current $2,350 fee to $450.

44. Order Defendant to issue and publish the final rule without further delay.

45. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date: January 6, 2026

| | |
|---|---|
| L. Marc Zell<br>D.C. Bar No. 959437<br>ZELL & ASSOCIATES INTERNATIONAL ADVOCATES, LLC<br>800 Connecticut Ave.<br>Washington, D.C. 20006<br>Email: *mzell@fandz.com* | Noam Schreiber,<br>D.C. Bar No. 90020231<br>ZELL & ASSOCIATES INTERNATIONAL ADVOCATES, LLC<br>800 Connecticut Ave.<br>Washington, D.C. 20006<br>*Email: noam.schreiber@fandz.com* |

*Counsel for Plaintiff*